Our second case, lawyers are ready. United States versus Morris. Ms. Martinez, take your time. I don't mean to rush you. Good morning, Your Honors. May it please the court. My name is Melissa Martinez. And I am amicus counsel on behalf of the Appellate Justice Initiative at McGuire Woods. Your Honors, Mr. Sebastian Morris, the appellant, was convicted and sentenced back in 2014. Upon his release from incarceration, he was subject to various conditions of supervised release. Among them were two conditions, restricting his computer and internet access, and prohibiting him from having social media accounts, such as Facebook. In 2018, in light of the Supreme Court's decision in Packingham versus North Carolina, Mr. Morris moved to modify those conditions, among several others. The district court denied his motion on procedural grounds without considering the merits and reasoning that the Fourth Circuit precedent in O'Brien from 2002 precluded Mr. Morris from challenging the legality of his sentence under Section 3583E2. Now, as the court knows, this court issued United States versus McCloud, authored by Judge Motz during the pendency of this appeal. And that case invalidated the premise upon which the district court's determination rested. Consequently, this court must vacate the trial court's denial of Mr. Morris's motion to modify and remand to the trial court for a determination of the merits of Mr. Morris's challenge. I'd like to make three points today. First, Mr. Morris did what he was procedurally required to do pursuant to McCloud in raising a Section 3583E2 motion based on changed legal circumstances that could not have been raised at the time of his sentencing. He was sentenced in 2014, and the Packingham case was decided in 2017. Second, this court's recent decisions indicate that at a minimum, the district court is required to make that substantive determination as to whether or not the changed legal circumstances that Mr. Morris raised is, in fact, valid and whether or not that affected the conditions of his supervised release. And the trial court must do that in the first instance. It is not for this court to make that determination in place of the trial court. And finally, Packingham and the recent opinions from this court did change the legality of Mr. Morris's conditions of supervised release, restricting his internet access. And what? Can I ask you, even without Packingham or anything else, Mr. Morris could have argued at the time of his sentencing that the conditions violated the First Amendment, couldn't he? He could have argued that, Your Honor, yes. He could have had a direct appeal following that. But when the Supreme Court issued the Packingham decision in 2017, it strengthened the basis for a challenge of the conditions of supervised release. Packingham made it very clear that these restrictions on using the internet, particularly as it relates to social media, is restrictive on anyone's First Amendment rights, particularly if the conditions are not narrowly tailored to the actual conviction at issue. Well, I take your point. But what we're looking at here is whether it's a changed circumstance. And so is Packingham a changed circumstance if he could have made the same argument before Packingham? It is, Your Honor, because what we've seen now are, following the issuance of Packingham, we've got federal and state courts applying Packingham to issues relating to supervised release and making it very clear that the use of social media is a First Amendment right. We didn't have a case before from the Supreme Court elucidating or saying. And I do recognize that. But remember, my first question to you was, could he have made the same argument before Packingham came out? You said yes. So what I'm trying to do is tease out how Packingham is a changed environment. I understand, Your Honor. But if there were no change in circumstances, the Supreme Court wouldn't have needed to issue Packingham in the first place. I guess at the very bottom here is that determination of whether or not Packingham is meritorious or not as a challenge to the conditions of supervised release, that determination should be made by the trial court in the first place. Ms. Martinez, just to follow up on Judge Motza's question, is it your position that the argument that you made or counsel below made following Packingham was foreclosed before Packingham? So I'd like to tease out that question first, so following the sentencing, Mr. Morris was represented by counsel. There was no direct appeal challenging his First Amendment rights at the time. When Mr. Morris was subsequently incarcerated, he was the one who raised the motion to modify pro se, and when he learned of the Packingham case, that's when he brought that particular challenge. So what we have here, Your Honors, is a pro se litigant finding a Supreme Court case that directly affected the conditions of his supervised release, conditions that he knew he would have to undergo upon him finishing his incarceration, and so that's when he brought that challenge, and it is a proper challenge under McLeod. Ms. Martinez, what about our decision in Comer? I noticed you didn't cite it in your reply brief. It pretty squarely talks about the social networking prohibition unless approved by the probation officer. How does that factor into your analysis of what we should do today? If we agree with you that Packingham was a changed legal circumstance, then do we divide these two conditions up and send back the blanket prohibition to the district court for reconsideration, but deal with Comer here and the ban, or send it back as a package, and on what legal basis would we do that? Sure, Your Honor, I would like to address the Comer case, and that case is an opposite, both procedurally and substantively. On the procedural portion, Comer was a direct appeal rather than a Section 3583E2 claim. It was not a motion to modify it. Right, but why is that a distinction with the difference in this case? It is a distinction without a difference in this case because the Fourth Circuit was able to look at the merits of the direct appeal of Packingham on direct appeal, whereas on a Section 3583E2 challenge, that issue was never dealt with substantively by the trial court, and therefore that issue is not really in front of this court because there's no determination below. So you're pretty much saying that the district court is in a better position to evaluate it in the first instance, because the district court said at the outset that it couldn't consider these. Now, if we tell the district court it can consider these, then that's the place it should begin. Yes, Your Honor, and not just that the district court is in a better position to do it, but under this court's precedence, it's where that determination should be made to begin with. And on the facts, Packingham was analyzed in a footnote in Comer, and they only looked at the issue of whether or not the condition of supervised release was vague in light of Packingham, and as applied to the defendant in that case, I think that Comer was correctly decided. The defendant in that case was using Facebook in order to lure her victims into sex trafficking, to disseminate revenge porn, and to meet felons to engage in personal relationships. Well, we don't have that here. Here what we have is somebody who was convicted of possessing child pornography, but it was a non-contact offense, and under the court's decisions in Ellis and in Hamilton, there is a distinction between contact and non-contact offenses as it relates to sexual offenses. And Your Honors, you're not writing from a blank slate. Last year, we had two panels in this court decide two cases in light of McLeod. We have the DeBolt case and the Whitten case, and in both cases, the trial courts determined that they didn't have jurisdiction to hear challenges to the legality of supervised release conditions. In Whitten, the case was remanded back to the trial court because the trial court never made a determination as to the merits of the motion to modify. The opposite result was reached in DeBolt because in that case, in addition to the trial court saying that it did not have jurisdiction to hear the motion, it also stated that if it did possess jurisdiction, it would deny the challenge on the merits. And I think that's the key issue here, Your Honor, which is that the trial court never made that substantive determination. And so meritorious or not, the trial courts got to do that because that's where the jurisdiction lies in looking at these issues. Are you agreeing for purposes of this argument today that the other issues have been defaulted, like the financial requirements and things like that? It seems in your brief, you mentioned them, but you can't tie them to Packingham or McLeod. So it seems to me they're effectively defaulted. Is that correct? And so, Your Honor, Mr. Morris did challenge eight conditions of his supervised release. We focused on conditions, I believe, four and five related to access. Right, so what is the legal basis for those going back to the trial court? Mr. Morris himself did not raise new legal circumstances, and at least according to my read of his particular motion, there were no changed legal or factual circumstances following his conviction. As AMCA's counsel directed at going through the appellate process under the McLeod case, I'm not really in a position to speak to the merits of those others, only to say that there were no changed legal or factual circumstances raised as to the other six conditions of supervised release that were raised by Mr. Morris. Can I go back to a question I asked earlier? So Whitten is an unpublished decision, and it does, I think, support your position about what it means to have a change in legal or factual circumstances, but the question I asked earlier was whether at the time of sentencing, a challenge to these conditions was foreclosed by applicable precedent. And I don't think you answered that question. If it wasn't, then why would Peckinham or any other case be a change in a legal circumstance? Yeah, Your Honor, to answer your first question directly, he was not foreclosed from challenging on direct appeal the conditions of supervised release, particularly as it relates to First Amendment issues. However, where we have new cases coming out of the Supreme Court, and in fact coming out of this court, particularly the Ellis case and the Hamilton case, which really talk about what it means to have social media, and particularly in the context of somebody with a conviction of a sex offense. These are cases that should be considered by the trial court when they are raised on a 3583E2 motion. What if the trial court said, well, those are cases whose holdings,  was available to the defendant at the time of sentencing, and therefore I deny the motion? Well, Your Honor, I guess we can say that about practically anything, that you could make an argument. Well, not necessarily. I mean, if you've got a Supreme Court case directly on point foreclosing your argument, I think that's a better case. But if the landscape is unplowed, and it takes, you know, someone had to be first, someone had to make the argument. Mr. Morris didn't make it, but that doesn't mean that he couldn't have made it. I agree with that, Your Honor, but with a Supreme Court case that is back pocket, his case gets a lot easier to argue, I think. And finally, I'd just like to conclude, as my time is running out, that the government has not cited to any case post the McLeod decision in which this court has held that conditions of supervised release couldn't be, the legality couldn't be challenged on a motion to modify. And I think that's really important, because what we've seen now are at least two cases post McLeod dealing with this exact issue, and at least the Witten case goes exactly the way that Mr. Morris has been arguing. Now, if the court doesn't have any other questions, I'll reserve the rest of my time. Thank you. Happy to hear from the government. Mr. Enright. May it please the court. Anthony Enright for the United States. The district court properly denied Morris's motion to modify his conditions of supervised release without reaching the merits, because it rested on grounds the modification statute doesn't permit under this court's decision in McLeod. Hackingham did not, as some of the questions alluded to, create a new legal rule that was, in the words, to use the words of McLeod, not available at the time of Morris's sentencing. What about Ellis? I mean, Judge Gregory's opinion in Ellis is pretty strong, isn't it? I mean, he says, rarely, if ever, will there be an absence of less restrictive alternatives than to deny total internet access, and he goes on to a great extent about the importance of internet access in today's society. So why, even though Packingham wasn't a case speaking to this type of situation, why isn't Ellis? Well, Your Honor, Ellis, I mean, I think, I'm not suggesting these cases don't speak to this type of situation. What I suggest is they don't say anything that wasn't available then. In 2014, Mr. Morris could have argued that the internet was central to daily life and could have cited many of the decisions that Ellis relied on to make that point, and I don't think anybody would have contested that. The Supreme Court established that the First Amendment applies to internet restrictions in ACLU versus Reno, not before, and that was 1997. Right, right, I understand, but now with the benefit of Ellis, where Judge Gregory says, given the breadth of such a condition, total internet ban, and the vast liberty it deprives, it will rarely be the least restrictive alternative. That, isn't that a new legal statement for purposes of precedent in this circuit? That an internet ban, a general ban, will rarely survive as the least restrictive alternative. That's pretty directly applicable here, isn't it? It is, Your Honor, but I don't think that is something, there's a couple things I guess I'd like to say about that. One is I don't think it's something that the defense couldn't have said in 2014, perhaps accurately, it's a big thing to take away someone's internet access. I believe Judge Gregory was not talking about facts of this case, but was talking about, or of Ellis, but of perhaps a future case. In the case of Ellis, Judge Gregory made clear, or that opinion made clear, we didn't introduce any evidence that there was any connection between the internet and the defendant's crime. And what this court has held since in Comer and in Hamilton, is that there's three conditions that allow a broad restriction on the internet. One is where there's a strong connection between the internet and the defendant used it in his crime, another is when it's part of his criminal history, and a third is where there's particular characteristics that make it appropriate. And so I think that's something that ultimately still leaves a lot of discretion to the district court. Of course, Comer upheld a social media restriction, and Hamilton upheld a very similar restriction to this one on the internet, which is, you can use the internet only with approval. So, Ellis didn't make it a, didn't make internet restrictions illegal. In order to change the law. No, but it did suggest they need to be considered with extremely close scrutiny. Extremely close scrutiny, but not scrutiny different from what the 3583 standard permits. It doesn't, what Packingham doesn't do is change that section 3583 standard. This court made that clear in Van Donk, and this court made that clear in Comer. That standard requires close scrutiny. It requires you have the least restrictive means to achieve the legitimate goals of supervised release. But that was the standard that was in place in 2014, and that is the standard that is in place after Packingham. And what the defendant could have done was said, look, this requires really close scrutiny, because it would be taking away a lot of my liberty. I have a suspicion that the defendant didn't make that argument because he was making the argument at the same time that supervised release would protect the public. So, a downward variance of more than 90 months in the prison term would be okay. And I think that's part of the reason that they didn't make that argument at the time, even though it was available. And it's also one of the reasons, I think, this court was cautious to impose limits and to state limits in McLeod. One of the reasons for the limitations litigating modifications of supervised release conditions is to encourage timely challenges. When a defendant considers a challenge to a supervised release condition at sentencing, they might think, well, okay, I'm putting together an entire sentence. The prison component and the supervised release component, and those are gonna work together. But on a modification motion, the defendant can do what he did here, which is, I'm almost done serving my prison sentence. Let me just ask the court to focus on supervised release in isolation, because there's no risk that the court might say, well, I'm not gonna impose such a downward variance, because I'm limited in the tools I can use to protect the public here. You know, I'm behind you on this argument. I thought that the, at least in McLeod, the, what we were talking about was something new. And is it your position this isn't new? It is my position, Your Honor, this isn't something new. I mean, it is certainly a new case citation. You can say the Supreme Court itself emphasized the importance of social media, which is something the Supreme Court hadn't done before. But I don't think you would have gotten any quarrel even in 2014 that social media was an important tool for daily life. That's not a new legal proposition. That might be a new factual proposition for someone who was sentenced in the mid-90s, but not for somebody who was sentenced in 2014. The other thing I would mention about Ellis is that that isn't a new legal proposition that the defense relied on, or I'm sorry, that Mr. Morris relied on. In his motion to the district court, and what this court did make clear in McLeod is that you look at what the movement actually presents to determine whether this court has, whether the district court has jurisdiction, although it didn't use the term jurisdiction, or authority to consider it. It's not a question of the court has an obligation to go look and see, well, is there anything that might have changed that I could consider here? It's incumbent upon the movement, and I understand that he's pro se, but it is incumbent upon the movement to at least identify the new circumstance that warrants the court's consideration. I don't think the court could be said to have improperly denied it based on a legal basis that was not presented to it. I did discuss some of the other conditions that Morris challenged in my brief. I don't want to go into detail about those because I don't understand there to be any dispute at this stage about those not being, the challenges to those conditions not being based on anything new, but I'm happy to answer questions if this court has any. If this court has no further questions, I'll yield the balance of my time back to the court. Okay, thank you. Are you any kin to people that live in Baltimore? Mr. Enright? I worked in Baltimore for a year, but I don't know. There's a whole big Enright family. Oh, oh. I think you would know about them. Literal kin, I do not know about them. Okay, thank you. I hope they're nice folks. Very nice. Thank you. As I'm sure you are. Your Honors, I'll be very brief. I just have a couple of points that I'd like to make. The first is that having an argument available to a defendant is one thing, and having a meritorious Supreme Court case to put in your brief is another. And I think that that's a key distinction here, is that you've actually got a tangible court case that you can cite to in support of your motion. And that's why it is a changed legal circumstance for Mr. Morris when Packingham came out. The other point that I'd like to make is, as I try to remember back to 2014, I think there is a difference between internet use in 2014 and in the present in 2022. I can't imagine looking for a job now without having LinkedIn or some other social media profile. It is extremely important for somebody who's being released from incarceration to try to find a good job to make his life better. These are very important aspects of daily life that he's either being deprived or he's at the mercy of a probation officer to try to clear everything first before trying to go on and move on with his life. So those are the only two points that I wanted to make to finish off. Thank you so much, and if you have any questions, I'm happy to answer them. So Mr. Morris failed to raise either Ellis or Hamilton, right? That is correct, Your Honor, and he was pro se when he filed his motion. And he filed his motion, I believe, I'll have to double check the dates here. We decided them after he filed his informal brief. That's right, they postdated his motion. So hopefully with competent counsel, he'll be able to raise Ellis and Hamilton in addition to packing him. Thank you. Thank you. I guess we thank counsel very much. Unfortunately, we can't come down and shake your hands, but we look forward to the day in which we can. And if you will excuse yourselves, then we'll have the next group of folks come in. Thank you. Thank you, Your Honor.
judges: Diana Gribbon Motz, Albert Diaz, Barbara Milano Keenan